## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-50227 |
| | § | |
| TRIPLE T COIL TUBING, L.L.C., | § | |
| DEBTOR. | § | CHAPTER 11 |

### EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO FACTORING AGREEMENT AND AUTHORIZING THE PURCHASE AND SALE OF ACCOUNTS WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS PROPERTY OF THE ESTATE PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the Court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response**

**Emergency consideration on this matter is needed, as Debtor requires working capital immediately to fund operations.**

**TO THE HONORABLE U.S. BANKRUPTCY JUDGE:**

COMES NOW, Debtor, Triple T Coil Tubing, L.L.C. ("Debtor"), and files this Emergency Motion for Order Authorizing Debtor to Enter into Factoring Agreement and Authorizing the Purchase and Sale of Accounts with Priority over Administrative Expenses and Secured by Liens Property of the Estate Pursuant to Sections 105, 363, and 364 of the Bankruptcy Code, and in support shows:

*Jurisdiction*

1.     This Court has jurisdiction over this matter under 28 U.S.C. § §157 and 1334. This is a core proceeding.

*Background Facts*

2.     Debtor filed this bankruptcy proceeding on the 21st day of October, 2014.  Debtor has continued in possession of its property and continues operating its oilfield drilling support business as debtor-in-possession.

3.     On January 14, 2014, Debtor entered into an Accounts Receivable Purchasing Agreement (the "Agreement") with Green Bank, N.A., a national banking association, (the "Factor").  Pursuant to the Agreement, Factor purchases, as absolute owner, with full recourse, Debtor's accounts receivable, advances eighty percent (80%) of the purchase receivables, and retains twenty percent (20%) the purchased receivables.  As collateral, pursuant to the Agreement, Factor was granted a first lien, among other things, on Debtor's accounts receivables.  Pursuant to the Agreement, Factor is granted a Factoring Fee of forty-five hundredths (0.45%) of the face amount of the purchased receivables.  The maximum amount of factoring is $2,000,000.00.  Attached hereto as **Exhibit "A,"** is a true and correct copy of the Agreement and UCC Financial Statement.

4.     Accordingly, Debtor's operations have been funded in whole by advances and over advances made under the Agreement and such operations are expected to be funded in whole post-petition by advances and over advances to be made under Agreement.  Thus, the need exists for Debtor to obtain funds to continue its business operations in the ordinary course of business.  In this connection, without the factoring, Debtor will not have sufficient funds to make payments, when due, to its employees, vendors and suppliers, or meet the demands of its customers. Indeed, the abrupt cessation of the Debtor's business would result without the factoring causing irreparable harm to the Debtor's estate.  Truly, the Debtor's ability to factor its receivables to meet working capital and liquidity needs is essential to maintaining the Debtor's

going concern value and to preserving and protecting the confidence of their employees, vendors, suppliers, and customers.

5.     Factor is in agreement to continue purchasing Debtor's accounts and make advances and financial accommodations to the Debtor only under the terms and conditions contained in the Agreement.  The Factor's agreement is evidenced by Factor's signature in the attached proposed order.

6.     Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative claim.  Debtor, however, is only able to obtain secured credit under Section 364(c) of the Bankruptcy Code.

7.     It is in the best interests of the Debtor's estate that Factor be allowed to purchase the Debtor's post-petition receivables and extend credit and financial accommodations to the Debtors under the terms and conditions set forth in Exhibit A, and that the Debtor be allowed to enter into the other agreements described in Exhibit A, to prevent a dissipation of Debtor's assets and to permit the Debtor to achieve a successful reorganization.  It is also in the best interest of the Debtor's estate to authorize Debtor, pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c), to grant to Factor a post-petition valid, binding, enforceable and perfected lien and/or security interest, as well as valid rights of set-off and not subject to avoidance by a trustee under the Bankruptcy Code, as identified in Exhibit A.

8.     It is in the best interest of Debtor's estate that all obligations arising from the Agreement be granted priority in payment over any other obligations now in existence or incurred hereafter by Debtor, and over all administrative expenses or charges against property of the kind specified in Bankruptcy Code §§ 503(b), 506(c), 507(a) and 507(b), whether arising in the Debtor's Chapter 11 case or in any superseding Chapter 7 case.

9.     It is in the best interest of Debtor's estate that Debtor be allowed to use Factor's cash collateral in the ordinary course of its business pursuant to Section 363 of the Bankruptcy Code.

10.     It is in the best interest of Debtor's estate that the automatic stay provisions of Bankruptcy Code § 362 be modified to permit (i) Debtor to implement the terms of the Factoring Arrangement, and (ii) Debtor to create, and Factor to perfect, any and all post-petition liens, mortgages and security interests granted hereunder.  Additionally, Factor should not be required to file UCC financing statements or other instruments with any other filing authority to perfect any post-petition lien, mortgage or security interest granted by this Order or take any other action to perfect such post-petition liens, mortgages and security interests.

11.     Based on the forgoing, Debtor respectfully request this Honorable Court to enter an order authorizing Debtor to ratify, reaffirm and adopt, as modified and supplemented by this Honorable's Court Order, the Agreement.

WHEREFORE, PREMISES, CONSIDERED, Debtor respectfully requests that this Court grant this Motion, and for any and all other relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

*/s/Adolfo Campero, Jr.*
ADOLFO CAMPERO, JR.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041
(956) 796-0330-Telephone
(956) 796-0399-Facsimile
State Bar No. 00793454

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

I, Adolfo Campero, Jr., do hereby certify that a true and correct copy of the foregoing motion for authorization to obtain post-petition credit was forwarded to the U.S. Trustee, Secured Creditors, 20 Largest Unsecured Creditors, and all parties in interest, via U.S. Mail, facsimile, or by electronic means, on this the 23rd day of October, 2014.

*/s/Adolfo Campero, Jr.*
ADOLFO CAMPERO, JR.

## ACCOUNTS RECEIVABLE PURCHASING AGREEMENT

THIS ACCOUNTS RECEIVABLE PURCHASING AGREEMENT (the "Agreement") is made this the 14th day of January 2014, by and between **Triple T Coil Tubing, LLC** (the "**Seller**"), a Texas limited liability company, and **Green Bank, N.A.**, a national banking association (the "**Purchaser**"), on the following terms and conditions:

1.  **Definitions.** The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have the meaning set forth in the UCC:

    1.1. **"Account"** - means any right of the Seller to payment as a result of the Seller's sale or lease of goods and/or rendering of services, and the proceeds thereof, whether or not earned by performance, as well as all security interests and guaranties therefore, whether now existing or hereafter created.

    1.2. **"Account Debtor"** - means the party or parties obligated to pay an Account.

    1.3. **"Additional Discount"** — For each ten **days** that a Purchased Account has been outstanding, or remains outstanding, beyond the Invoice Date 0.45% of the Face Amount of the Purchased Account.

    1.4. **"Advance"** - the payment by Purchaser to Seller for a Purchased Account.

    1.5. **"Avoidance Claim"** - any claim that any payment received by Purchaser from or for the account of an Account Debtor is avoidable under the Bankruptcy Code or any other debtor relief statute.

    1.6. **"Chargeback Account"** — an Account purchased hereunder is a Chargeback Account when, upon demand, Seller has paid to Purchaser all amounts due and owing to Purchaser for that Account pursuant to the terms hereof.

    1.7. **"Chargeback Date"** - the date which is ninety (90) days from the Invoice Date.

    1.8. **"Clearance Days"** - five (5) days added to posting date to allow payments to process.

    1.9. **"Client Reference Manual"** - Purchaser's manual of policies, procedures, rules, and regulations, as such may exist presently, and as may be revised and/or amended from time to time at the Purchaser's discretion.

    1.10. **"Closed"** - a Purchased Account is closed upon the first to occur of (i) Purchaser's receipt of full payment, or (ii) the unpaid Face Amount has been charged to the Reserve Account by Purchaser pursuant to the terms hereof.

    1.11. **"Collateral"** — Seller's right, title, and interest in and to all now owned and hereafter acquired Accounts, Deposit Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles. All proceeds of any of



the foregoing and proceeds of proceeds.

1.12. "Delay Discount" – .0065% per day.

1.13. "Early Termination Fee" - N/A

1.14. "Early Termination Date" - the termination date requested by Seller which is earlier than the Termination Date.

1.15. "Eligible Account" - an Account which is acceptable for advance as determined by Purchaser in the exercise of its sole judgment and determination.

1.16. "Event of Default" - See Section 14.

1.17. "Face Amount" – the total amount due on an Invoice at the time of purchase by Purchaser.

1.18. "Factoring Fee" - 0.45% of the Face Amount of the Purchased Account.

1.19. "Field Examination Fee" – N/A

1.20. "Interest" – N/A.

1.21. "Invoice" - the document that evidences or is intended to evidence an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

1.22. "Invoice Date" - the date an Invoice representing a Purchased Account is first transmitted to the Account Debtor.

1.23. "Invoice Delivery Schedule" - a form titled "Invoice Delivery Schedule and Bill of Sale" supplied by Seller to Purchaser from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement, and wherein Seller transfers such Accounts to Purchaser, subject to Seller's acceptance thereof.

1.24. "Maximum Amount" - $ 2,000,000.

1.25. "Maximum Rate" - The term "Maximum Rate," as used herein, shall mean the maximum nonusurious interest rate, if any, that at any time, or from time to time, may under applicable law be contracted for, taken, reserved, charged or received on any indebtedness evidenced by this Agreement under the laws which are presently in effect of the United States and the State of Texas applicable to such holder and such indebtedness or, to the extent allowed by law under such applicable laws of the United States and the State of Texas which may hereafter be in effect, which allow a higher maximum non-usurious interest rate than applicable laws now allow; provided, that in determining the Maximum Rate, due regard shall be given, to the extent required by applicable law, to any and all

relevant payments, fees, charges, deposits, balances, agreements and calculations which may constitute or be deemed to constitute interest, or be deducted from principal to calculate the interest rate or otherwise affect interest rate determinations, so that in no event shall the Purchaser contract for, charge, receive, take, collect, reserve or apply any amount in excess of the maximum non-usurious rate of interest permitted by applicable law. To the extent that Texas law determines the Maximum Rate, the Maximum Rate shall be determined by utilizing the "indicated rate ceiling" from time to time in effect pursuant to the Texas Finance Code (V.T.C.A. Finance Code Section 303.001 et seq.) (the "Texas Finance Code") or such successor statute, as then in effect, governing usury. The Maximum Rate shall not be limited to the applicable rate ceiling in the Texas Finance Code or such successor statute if Federal laws or other state laws now or hereafter in effect and applicable to this Agreement(and the interest contracted for, charged and collected hereunder) shall permit a higher rate of interest.

1.26.   **"Misdirected Payment Fee"** - fifteen percent (15%) of the amount of any payment on account of a Purchased Account which has been received by Seller and not delivered in kind to Purchaser on the next business day following the date of receipt by Seller.

1.27.   **"Missing Notation Fee"** - 15% of the Face Amount.

1.28.   **"Notation"** - "This Account is assigned to, is owned by and is payable to Green Bank, N. A., P.O. Box 851197, Richardson, Texas 75085-1197. Payment other than to the above assignee does not constitute payment. Notify the above Assignee by telephone at (800) 994-0779 or fax (972) 528-6799 immediately if the merchandise or services represented by this invoice have not been received or completed."

1.29.   **"Obligations"** –

　　1.29.1.   All present and future obligations owing by Seller to Purchaser, whether or not pursuant to this agreement, or evidenced by any note or other instrument, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, whether arising before, during or after the commencement of any Bankruptcy Case in which Seller is a Debtor, including but not limited to any obligations arising pursuant to letters of credit or acceptance transactions or any other financial accommodations;

　　1.29.2.   All requirements of performance of any covenant or requirement under this Agreement; and

　　1.29.3.   Payment and performance of all modifications, amendments, extensions, and renewals, however evidenced, of any of the Obligations.

1.30.   **"Origination Fee"** – N/A.

1.31.    "Prime Rate" - the minimum prime lending rate charged by large U.S. money center commercial banks as published from time to time in the Money Rates Section of the Wall Street Journal ("Prime Rate"), each change in the rate charged hereunder to become effective without notice to the undersigned as of the date of the rate adjustment, but in no event shall the rate charged hereunder exceed the maximum rate of interest permitted by applicable law.   The undersigned understand and acknowledge that Purchaser may from time to time make various agreements at rates of interest having no relationship to the Prime Rate, and that the Prime Rate may not be the lowest interest rate charged by Purchaser.  In the event the Wall Street Journal is no longer published or in the event the Wall Street Journal discontinues publishing a "Prime Rate", the Prime Rate shall be the nearest comparable published rate, as determined by the Purchaser.

1.32.    "Purchase Date" - the date on which Seller has been advised in writing that Purchaser has agreed to purchase an Account.

1.33.    "Purchase Price" - the Face Amount less sales and purchase discounts less any accrued Additional Discount, or portion thereof.

1.34.    "Purchased Accounts" - Accounts purchased hereunder which are not Chargeback Accounts.

1.35.    "Required Reserve Amount" - the Reserve Percentage multiplied by the unpaid balance of Purchased Accounts.

1.36.    "Reserve Account" - an account representing an unpaid portion of the Purchase Price, maintained by Purchaser to ensure Seller's performance of the provisions hereof.

1.37.    "Reserve Percentage" - 20%.

1.38.    "Reserve Shortfall" - the amount by which the Reserve Account is less than the Required Reserve Amount.

1.39.    "Termination Date" - the earlier of (i) one year from the date hereof, or (ii) the date on which Purchaser elects to terminate this Agreement pursuant to the terms herein.

1.40.    "UCC" - means the Uniform Commercial Code in effect in the State of Texas.

2. **Sale; Purchase Price; Billing; Reserve.**

2.1    **Assignment and Sale.**

2.1.1   Seller shall offer to Purchaser as absolute owner, with full recourse, all of Seller's Accounts as are listed from time to time on Invoice Delivery Schedules.

2.1.2 Each Invoice Delivery Schedule shall be accompanied by such documentation supporting and evidencing the Accounts as Purchaser shall from time to time request which may include purchase orders, shipping evidence, proof of completed service, proof of debtor invoice acceptance, etc.

2.1.3 Purchaser may, but need not purchase from Seller such Accounts as Purchaser determines to be Eligible Accounts, so long as the unpaid balance of Purchased Accounts does not exceed, before and after such purchase, the Maximum Amount.

2.1.4 Purchaser shall pay the Purchase Price of any Purchased Account, less any amounts due to Purchaser from Seller, whereupon the Accounts shall be deemed purchased hereunder.

2.1.5 Seller agrees to forward all payments which are proceeds of Collateral to the location directed by Purchaser, regardless whether the funds relate to Accounts purchased by Purchaser.

2.2 **Authorization for Purchases.** Subject to the terms and conditions of this Agreement, Purchaser is authorized to purchase Accounts upon telephonic, facsimile or other instructions received from anyone purporting to be an officer, employee or representative of Seller.

2.3 **Billing.** Purchaser may, but need not, send a monthly statement to all Account Debtors itemizing their account activity during the preceding billing period.

2.4 **Reserve Account.**

2.4.1 Seller shall pay to Purchaser the amount of any Reserve Shortfall, together with the Delay Discount, on demand, or if Purchaser makes no demand, 3 business days after its occurrence.

2.4.2 Purchaser may charge the Reserve Account with any Obligation, including any amounts due from Seller to Purchaser hereunder.

2.3.3 Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account.

2.4.4 Upon termination of this Agreement, Purchaser may retain the Reserve Account for ninety days thereafter to be applied to payment of any Obligations that were known or unknown to Purchaser at the time of termination.

2.4.4 Purchaser shall pay to Seller on a monthly basis, any amount by which collected funds in the Reserve Account are greater than the

Required Reserve Amount.

3.      **Fees and Expenses.**  Seller shall pay to Purchaser:

3.1     **Origination Fee.**  The Origination Fee, which may be deducted from the Purchase Price payable by Purchaser on the first purchases of accounts hereunder.  To the extent that said Purchase Price is less than the Origination Fee, the unpaid balance shall be due thirty days from the date hereof.

3.2     **Additional Discount.**  The Additional Discount for each Purchased Account.

3.3     **Missing Notation Fee.**  The Missing Notation Fee on any Invoice that is sent by Seller to an Account Debtor which does not contain the Notation.

3.4     **Misdirected Payment Fee.**  Any Misdirected Payment Fee immediately upon its accrual.

3.5     **Delay Discount.**  The Delay Discount, on demand, on:

4.5.1   All past due amounts due from Seller to Purchaser hereunder; and

4.5.2   The amount of any Reserve Shortfall.

3.6     **Out-of-pocket Expenses.**  The out-of-pocket expenses directly incurred by Purchaser in the administration of this Agreement such as wire transfer fees, postage and the Field Examination Fee. Seller shall not be required to pay for more than four field exams per twelve-month period.

3.7     **Early Termination Fee.**  The Early Termination Fee if Seller terminates this Agreement, prior to the Termination Date.

4.      **Chargeback Accounts.**

4.1     **Requirement to Chargeback.**  Purchaser may, in its sole discretion, require that Seller reimburse Purchaser for a Purchased Account by payment of the entire amount then due and owing to Purchaser for the Purchased Account, on demand, or, at Purchaser's option, by Purchaser's charge to the Reserve Account:

4.1.1   Any Purchased Account, the payment of which has been disputed by the Account Debtor obligated thereon, Purchaser being under no obligation to determine the merit of such dispute;

4.1.2   Any Purchased Account for with Seller has breached a warranty under Section 11 hereunder;

4.1.3   All Purchased Accounts upon the occurrence of an Event of Default, or upon the termination date of this Agreement; and

4.1.4   Any Purchased Account which remains unpaid beyond the Chargeback Date.

4.2   Purchaser may, but is not required to, collect from an Account Debtor any unpaid amounts due under a Chargeback Account, in which case Purchaser will credit Seller for amounts collected.

5.   Security Interest.

5.1   As collateral securing the Obligations, Seller grants to Purchaser a continuing first priority security interest in and lien upon the Collateral.

5.2.   Notwithstanding the creation of such security interest, the relationship of the parties shall be that of Purchaser and Seller of accounts, and not that of Purchaser and borrower.

6.   Guaranty.   As further security for the payment of the Obligations, Patrick G. Mendoza, Troy J. Williams, Christopher Garcia, Sergio E. Lopez, SR., Ron E. Bruno, and Nogal Energy, LLC have fully and unconditionally guaranteed the Seller's obligations and performance of this Agreement, as evidenced by Guarantees executed contemporaneously herewith. Such Guarantees shall be fully enforceable in accordance with their terms.

7.   Clearance Days.   For all purposes under this Agreement, Clearance Days will be added to the date on which any payment is received by Purchaser.

8.   Authorization to Purchaser.

8.1   Rights Relating to Collateral. Seller hereby irrevocably authorizes Purchaser, at Seller's expense, at any time, and from time to time, in the Purchaser's sole discretion, to exercise at any time any of the following powers until all of the Obligations have been paid in full:

8.1.1   Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all cash, checks, commercial paper, drafts, remittances and other instruments and documents relating to the Collateral or the proceeds thereof,

8.2.1   Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon the Accounts and other Collateral,

8.3.1   After an Event of Default, change the address for delivery of mail to Seller and to receive and open mail addressed to Seller,

8.4.1   After an Event of Default, extend the time of payment of, compromise

or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all accounts or other Collateral which includes a monetary obligation and discharge or release any Account Debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such account debtor), without affecting any of the Obligations,

8.5.1   Pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Delay Discount shall accrue and shall be due and payable,

8.6.1   File in the name of Seller or Purchaser or both, (1) mechanics lien or related notices or (2) claims under any payment bond, in connection with goods or services sold by Seller in connection with the improvement of realty, and

8.7.1   Notify any Account Debtor obligated with respect to any Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser, and

8.8.1   Communicate directly with Seller's Account Debtors to verify the amount and validity of any Account created by Seller.

8.2   **Financing Statements.**  The Seller irrevocably authorizes the Purchaser at any time and from time to time to file any initial financing statements and amendments thereto that Purchaser deems necessary as a result of this Agreement including those that:

8.2.1   Indicate the Collateral as all assets of the Seller or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail;

8.2.2   Contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether the Seller is an organization, the type of organization, the state of organization and any organization identification number issued to the Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates; and

8.2.3   Contain a notification that the Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortuously

interfering with Purchaser's rights;

8.2.4   Advises third parties that any contact of Seller's Account Debtors may be tortuously interfering with Purchaser's collection rights.

8.3   **Release.**   Seller hereby releases and discharges Purchaser, its officers, employees and designees, from any liability arising from any acts under this Agreement or in furtherance thereof whether of omission or commission, and whether based upon any error of judgment or mistake of law or fact, except for willful misconduct. In no event will Purchaser have any liability to Seller for lost profits or other special or consequential damages. Without limiting the generality of the foregoing, Seller releases Purchaser from any claims which Seller may now or hereafter have arising out of Purchaser's endorsement and deposit of checks issued by Seller's customers stating that they were in full payment of an account, but issued for less than the full amount which may have been owed on the account. Further, the Purchaser shall have no liability to the Seller for any mistake in its dealings with any Account Debtors or in the application of any payment received by it with respect to any Account Receivable unless based on intentional misconduct.

8.4   **Authorization to Deposit.**   Seller authorizes Purchaser to accept, endorse and deposit on behalf of Seller any checks tendered by an Account Debtor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the UCC, or otherwise.

8.5   **Offset Rights.**   The Purchaser shall have the right to offset from amounts received by Purchaser any amounts that the Purchaser believes that the Seller owes the Purchaser.

9.   <u>**ACH Authorization.**</u>   In order to satisfy any of the Obligations, Purchaser is hereby authorized by Seller to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller wherever located.

10.   <u>**Covenants By Seller.**</u>

10.1   **With Respect to Accounts.**   Seller shall not, without the prior written consent of Purchaser in each instance, (a) grant any extension of time for payment of any of the Accounts and/or other Collateral, (b) compromise or settle any of the Accounts and/or other Collateral for less than the full amount thereof, (c) release in whole or in part any Account Debtor, or (d) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of the Accounts and/or other Collateral.

10.2   **Access.**   From time to time as requested by Purchaser, at the sole expense of Seller, Purchaser or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an

Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser or its designee to make copies of such books and records or extracts therefrom as Purchaser may request. Without expense to Purchaser, Purchaser may use any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of accounts and realization on other Collateral as Purchaser, in its sole discretion, deems appropriate. Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Seller.

10.3   **Notice of Assignment.**   Before sending any Invoice to an Account Debtor, Seller shall mark same with the Notation, or any other notice of assignment as may be required by Purchaser.

10.4   **Taxes.**   Seller shall pay when due all payroll and other taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require. Seller will notify Purchaser in writing immediately upon imposition or assessment of any lien, levy, tax lien, assessment or similar action against Seller or any of Seller's assets. Seller will execute IRS Form 8821 on behalf of Purchaser and pay for any IRS searches deemed necessary by Purchaser. Seller agrees to notify Purchaser of any tax deficiency or lien.

10.5   **No Creation by Seller of Other Liens.**   Except for liens in favor of Purchaser, Seller shall not create, incur, assume or permit to exist any lien upon or with respect to any Account and/or other Collateral now owned or hereafter acquired by Seller. In addition, Seller will not, without prior, written notice and consent of Purchaser, sell or factor Accounts other than to Purchaser for the period of this Agreement without express consent of Purchaser.

10.6   **Insurance.**   Seller shall maintain insurance on all insurable property owned or leased by Seller in the manner, to the extent and against at least such risks (in any event, including but not limited to fire and business interruption insurance) as usually maintained by owners of similar businesses and properties in similar geographic areas. All such insurance shall be in amounts and form and with insurance companies acceptable to Purchaser in its sole discretion, and shall reflect the Purchaser as loss payee; and that the Purchaser shall be listed in the policy as an additional insured entitled to receive notices. Seller shall furnish to Purchaser: (a) upon written request, any and all information concerning such insurance carried; (b) as requested by Purchaser, loss payable endorsements (or their equivalent) in favor of Purchaser. All policies of insurance shall provide for not less than thirty (30) day's prior written cancellation notice to Purchaser. Seller agrees that Purchaser may present claims under any insurance policy issued in accordance with this Section.

10.7  **Payments Received by Seller.**  Notwithstanding that Seller has agreed to pay the Misdirected Payment Fee, if the Seller shall receive any payments with respect to any Accounts sold to the Purchaser, then the Seller shall hold such payments in trust for the benefit of the Purchaser, and shall turn over the funds within one (1) business day following the date of receipt by Seller of the amount of any payment on account of a Purchased Account.

10.8  **Additional Access and Notification.**  Seller covenants and agrees to (i) permit the Purchaser access to all books and records of the Seller during normal business hours; (ii) notify the Purchaser in writing immediately upon imposition or assessment of any lien, levy, tax lien, assessment or similar action against the Seller or any of the Seller's assets; (iii) furnish the Purchaser, upon request, any and all papers, documents, or records of whatever nature related directly or indirectly to any Accounts;

10.9  **Negative Covenants.**  Seller agrees that it will not, without prior, written consent by the Purchaser, (a) use any trade name other than that set out at the beginning of the Agreement, (b) change its name or use an assumed name; (c) change its jurisdiction of organization (d) merge or consolidate with any other corporation or entity; or (e) dissolve or cease its operations as they are now conducted, or (f) take any action that would cause or induce any Account Debtor on any Account to fail to pay the Account in a timely manner; (g) make any payments to its shareholders or other investors other than the reimbursement of ordinary and necessary business expenses incurred by any shareholder or other investors on behalf of Seller and salaries at the annual rate as of the date hereof; (h) declare any dividends, or purchase, redeem, retire or otherwise acquire any of its capital stock or make any distribution of its assets to any of its shareholders or other investors.

10.10  **Returned Merchandise Held in Trust.**  Seller covenants and agrees that in the event any merchandise represented by an Account shall be returned to or repossessed by the Seller, such merchandise shall be held by the Seller in trust for the Purchaser, separate and apart from the Seller's own property, and subject to the Purchaser's directions and control;

10.11  **Covenants With Respect to Returned Merchandise.**  With respect to any returned or repossessed merchandise, the Seller at its sole cost and expense, shall (a) provide proper storage therefor, (b) maintain adequate insurance coverage thereon, (c) prepare the same for sale, (d) defend title thereto, (e) take all other actions necessary for the protection thereof, (f) pay freight and related shipping costs, and (g) be responsible for any other costs or expenses incurred in connection with the foregoing, including attorneys fees;

10.12  **Collection Efforts.**  Seller acknowledges that the Purchaser intends to make collection efforts, enforce collection rights, or exercise any other duties or diligence in connection therewith in order to protect its position. In such event, and otherwise at the Purchaser's discretion, Purchaser may sell or

assign the Accounts, the Collateral or any other of its rights to another party, all of the Purchaser's rights and interests hereunder being fully assignable and transferable;

10.13   **Notification of Account Debtors.** Seller understands that the Purchaser may notify an Account Debtor to make payment to the Purchaser, and in advance waives any rights and claims which it may hereafter have, or hereafter claim to have, based in any way upon such contacts with and/or notifications to such Account Debtors, including but not limited to claims for disparagement, interference with business relationships, or any other form of damage to the Seller or its business(es);

10.14   **Information Requirements.** Seller shall provide the following to Purchaser:

10.14.1 Within forty-five (45) days of the close of each fiscal year:

10.14.1.1   Unaudited management prepared balance sheet, income statement;

10.14.2 On an annual basis within forty-five (45) days of the date on which the following is required to be filed, copies of:

11.14.2.1   All federal tax returns;

11.14.2.2   Personal financial statement (annually) and federal tax returns on all personal guarantors of this Agreement.

10.15   **Avoidance Claims.** Seller shall (i) indemnify Purchaser from any loss arising out of the assertion of any Avoidance Claim, and shall pay to Purchaser on demand the amount thereof; (ii) notify Purchaser within two business days of it becoming aware of the assertion of an Avoidance Claim. This provision shall survive termination of this Agreement.

10.16   **Client Reference Manual.** Seller covenants and agrees to comply with the Purchaser's Client Reference Manual, as such may exist presently, and as may be revised and/or amended from time to time at the Purchaser's discretion, upon notice to Seller.

11.   <u>Representations and Warranties</u>. Seller represents and warrants that:

11.1   **Authority.** It is fully authorized to enter into this Agreement and to perform hereunder;

11.2   **Binding Nature.** This Agreement constitutes its legal, valid and binding obligation;

11.3   **Solvent and Good Standing.** Seller is solvent and in good standing in the

State of its organization; and

11.4   **Nature of Accounts.** The Purchased Accounts are and will remain:

12.4.1   bona fide existing obligations created by the sale and delivery of goods
or the rendition of services in the ordinary course of Seller's business;

12.4.2   unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation;

12.4.3   not sales to any entity that is affiliated with Seller or in any way not an "arms length" transaction;

11.5   **No Notice of Bankruptcy.** Purchaser has not received notice of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any applicable account debtor regarding Purchased Accounts;

11.6   **Restriction on Accounts.** Seller will not assign to the Purchaser any accounts receivable (i) that have been fully or partially paid, satisfied, or discharged or (ii) which are in dispute, or for which the goods or services have not been delivered or performed;

11.7   **Account Purchase Transaction.** Seller understands and agrees that none of the payments contemplated by the Agreement shall constitute a transaction for the use, forbearance, or detention of money; and that all transactions contemplated hereby are account purchase transactions, as defined in the Texas Finance Code, Section 306.011;

11.8   **Consulting with Attorney.** Seller has consulted with an attorney of Seller's choice with respect to this Agreement and the transactions contemplated herein (or in the alternative, Seller acknowledges that Purchaser has recommended that Seller consult with an attorney and Seller has knowingly elected not to do so), and has relied solely on the advice of such attorney and/or on the Seller's own judgment in deciding to enter into this Agreement;

11.9   **Waiver of Consumer Rights.** - In connection with this Agreement, Seller waives Seller's rights, if any, under the Deceptive Trade Practices-Consumer Protection Act, Texas Business and Commerce Code Section 17.41 et seq., a law that gives consumers special rights and protections. After consultation with an attorney of Seller's own selection, Seller voluntarily consents to this waiver.

12.   **Indemnification.** Seller agrees to indemnify Purchaser against and save Purchaser harmless from any and all manner of suits, claims, liabilities, demands and expenses (including reasonable attorneys' fees and collection costs) resulting from or arising out of this Agreement, whether directly or indirectly, including the transactions or relationships contemplated hereby (including the enforcement of this

Agreement), and any failure by Seller to perform or observe its obligations under this Agreement.

13.   <u>Disclaimer of Liability.</u>  In no event will Purchaser be liable to Seller for any lost profits, lost savings or other consequential, incidental or special damages resulting from or arising out of or in connection with this agreement, the transactions or relationships contemplated hereby or Purchaser's performance or failure to perform hereunder, even if Purchaser has been advised of the possibility of such damages.

14.   <u>Default.</u>

14.1   <u>Events of Default.</u>  The occurrence of any one (1) or more of the following events will constitute an Event of Default hereunder: (a) Seller defaults in the payment of any Obligations or in the performance of any provision hereof or of any other agreement now or hereafter entered into with Purchaser, or any warranty or representation contained herein proves to be false in any way, howsoever minor, (b) Seller or any guarantor of the Obligations becomes subject to any debtor-relief proceedings, (c) any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser or shall notify Purchaser of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever, (d) Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations, (e) Seller shall generally not pay, or shall be unable to pay, or shall admit in writing its inability to pay its debts as such debts become due, (f) Seller shall make an assignment for the benefit of creditors, or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (g) Seller shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution, or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (h) Seller shall have had any such petition or application filed or any such proceeding commenced against it in which an order for relief is entered or an adjudication or appointment is made, (i) Seller shall take any corporate action indicating its consent to, approval of, or acquiescence in any such petition, application, proceeding, or order for relief or the appointment of a custodian, receiver, or trustee for all or any substantial part of its properties, (j) Seller shall suffer any such custodianship, receivership, or trusteeship, (k) Seller shall have failed to comply in any respect with the terms and conditions of this Agreement or related documents, (j) Seller fails to pay taxes due any taxing authority or allows a lien for taxes to be placed against its property, (k) Seller misdirects payments and fails to forward them to Purchaser within one (1) business day (j) Seller shall have failed to perform any other Obligation under this Agreement.

14.2   <u>Waiver of Notice.</u>  SELLER WAIVES ANY REQUIREMENT THAT PURCHASER INFORM SELLER BY AFFIRMATIVE ACT OR OTHERWISE OF ANY ACCELERATION OF SELLER'S OBLIGATIONS HEREUNDER.

FURTHER, PURCHASER'S FAILURE TO CHARGE OR ACCRUE CHARGES OR FEES AT ANY "DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY PURCHASER OF ITS CLAIM THERETO.

14.3   Effect of Default.

    14.3.1   Upon the occurrence of any Event of Default, Purchaser may (1) immediately declare Seller in default under this Agreement, at which time all Obligations shall immediately become due and payable without notice; (ii) exercise any and all other remedies allowed under this Agreement, the Security Agreement, and/or otherwise allowed by law and/or in equity; or (iii) both.

    14.3.2   The Delay Discount shall accrue and is payable on demand on any Obligation not paid when due.

15.   <u>Account Statement.</u>  Purchaser shall render to Seller a statement setting forth the transactions arising hereunder. Each statement shall conclusively be considered correct and binding upon Seller, except to the extent that Purchaser receives, within fifteen (15) days after the mailing of such statement, written notice from Seller of any specific exceptions by Seller to that statement. If no notice is received by Purchaser within such fifteen (15) day period, then such statement shall be binding against Seller as to any items to which the Seller has not objected.

16.   <u>Waiver.</u>  No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Purchaser may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any acquiescence in any breach or default hereunder; nor shall any waiver by Purchaser of any breach or default by Seller hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to Purchaser hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have. Any waiver, permit, consent or approval by Purchaser of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

17.   <u>Termination; Effective Date.</u>

    17.1   Effective.  This Agreement will be effective when accepted by Purchaser and shall be further annually extended automatically unless Seller shall indicate its intention to terminate at least sixty days prior to the next anniversary date hereof, whereupon this Agreement shall terminate on the next anniversary date hereof.

17.2   **Termination.**  Purchaser or Seller may terminate this Agreement by giving thirty-day's prior written notice of termination, whereupon this Agreement shall terminate on the earlier date of the date of termination or on the anniversary date hereof, provided, however that if Seller terminates this Agreement prior to the anniversary date hereof, Seller will pay the Early Termination Fee.

17.3   **Effect of Termination.**  The effect of the termination of this Agreement shall be that Seller shall be required to immediately pay the Obligations to Purchaser, including, but not limited to the Early Termination Fee, if applicable, and Purchaser shall not purchase any additional Accounts from Seller. Upon termination of this Agreement, all obligations of the Seller shall continue in full force and effect until all Obligations of the Seller are fully paid.

18.   **Amendment.** Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated, nor may any consent to the departure from the terms hereof be given, orally (even if supported by new consideration), but only by an instrument in writing signed by all parties to this Agreement. Any waiver or consent so given shall be effective only in the specific instance and for the specific purpose for which given.

19.   **No Lien Termination Without Release.**  In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Seller has executed and delivered to Purchaser a general release in the form of Exhibit A hereto. Seller understands that this provision constitutes a waiver of its rights under §9-513 of the UCC.

20.   **Conflict.**  Unless otherwise expressly stated in any other agreement between Purchaser and Seller, if a conflict exists between the provisions of this Agreement and the provisions of such other agreement, the provisions of this Agreement shall control.

21.   **Survival of Agreement, Representations, Warranties and Covenants.**  All warranties, representations and covenants made by Seller herein or in any other instrument delivered by Seller or on Seller's behalf in connection with this Agreement shall be considered to have been relied upon by Purchaser and shall survive the purchase of the Receivables regardless of any investigation made by Purchaser or on Purchaser's behalf and shall continue in full force and effect so long as any amount due or to become due hereunder is outstanding and unpaid and so long as this Agreement has not terminated. Specifically, all warranties, representations and covenants made by Seller in this Agreement shall be deemed reaffirmed by Seller upon execution of each supplemental Invoice Delivery Schedule.

22.   **Severability.**  In the event any one or more of the provisions contained in this

Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

23.   <u>Enforcement</u>.  This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each party and its respective attorneys, and shall be construed accordingly.

24.   <u>Relationship of Parties</u>.  The relationship of the parties hereto shall be that of Seller and Purchaser of Accounts, and Purchaser shall not be a fiduciary of the Seller, although Seller may be a fiduciary of the Purchaser.

25.   <u>Attorneys Fees</u>.  Seller agrees to reimburse Purchaser on demand for:

   24.1   **Costs and Expenses**.  The actual amount of all costs and expenses, including attorneys' fees, which Purchaser has incurred or may incur in:

      24.1.1   negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith, all of which shall be paid contemporaneously with the execution hereof;

      24.1.2   any way arising out of this Agreement;

      24.1.3   protecting, preserving or enforcing any lien, security interest or other right granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims; and

      24.1.4   collecting any Accounts from Account Debtors.

   24.2   **Additional Expenses**.  The actual costs, including photocopying (which, if performed by Purchaser's employees, shall be at the rate of $.1 0/page), travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which Seller is a party;

   24.3   **Enforcement**.  The actual amount of all costs and expenses, including attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan thereunder.

26.   <u>JURY TRIAL WAIVER</u>.   SELLER HEREBY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT,

DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE
BE DELIVERED IN CONNECTION WITH THIS AGREEMENT, AND AGREES,
TO THE EXTENT PERMITTED BY APPLICABLE LAW, THAT ANY SUCH
ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT
BEFORE A JURY.

27.  **Choice of Law.**  This Agreement and all transactions contemplated hereunder and/or
evidenced hereby shall be governed by, construed under, and enforced in accordance
with the laws of the State of Texas.

28.  **Alternative Dispute Resolution.**  Except for matters with respect to non-payment by
Seller, any controversies or claims arising out of this Agreement shall be resolved by
mediation or arbitration as follows:

28.1  **Allegation of Breach.**  Written notice of any alleged breach of this contract and
any contemplated suit, legal action, demand for mediation or administrative
complaint by any party to this contract against any other party to this
contract shall be delivered to the other party by courier, certified mail or
personal delivery. This delivery shall be termed "notice".

28.2  **Mediation.**  Five days following delivery of notice, if both parties have not
provided written settlement of the alleged cause of action, mediation under
the terms of Title 7 of the Texas Civil Practices and Remedies Code shall be
scheduled by Solutions with Consensus, Inc (SCI), a Texas Corporation.
Seven days after notice has been delivered, SCI shall deliver to each side a
list of not less than three mediators. Each party may within 24 hours of
delivery of the list strike one name and list the other two names in order of
preference. From this list, SCI shall select a mediator and the mediation of
the dispute shall be scheduled within five days of that selection. If either side
does not mark its list, SCI shall proceed to select the mediator. Both parties
must appear at the mediation with or without counsel. The failure of either
side to appear in mediation, as directed, will be regarded as a material
breach of this contract, which breach may be brought before the arbitrator as
an additional subject of claim by the side appearing in the mediation. Both
sides shall share equally in the costs of the mediation by paying one half the
total fees charged when the mediation is scheduled. The mediation shall then
proceed and may continue in proceedings for up to 10 days, at the discretion
of the mediator. At any time during the proceedings the mediator may
declare an impasse and suspend mediation. If an impasse is declared the
parties shall proceed to binding arbitration. If mediation produces a written
agreement, it will be regarded by both parties as a contract and will be fully
enforceable in all respects.

28.3  **Arbitration.**  Any dispute not resolved in mediation within 10 days of the
mediation shall be referred next to binding arbitration under the rules of the
American Arbitration Association for expedited hearings with a single
arbitrator ruling on the matters at controversy and applying the commercial
rules of the American Arbitration Association. The parties may exchange a

list of proposed arbitrators and either agree or fail to agree on the appointment of such arbitrator. If the parties cannot agree on an arbitrator within 10 days of the notice of one to the other, then the American Arbitration shall be asked by the complaining party to appoint an arbitrator, which it shall be directed to do within 48 hours. Any arbitration shall be conducted under the provisions of the Federal Arbitration Act. However, Texas statutes relating to the formation and implementation of contracts may be cited. The Texas General Arbitration Act or common law arbitration provisions of the Texas statutes shall not apply to this arbitration. Both parties waive any issue of arbitrability or objection to the process. The prevailing party shall be entitled to all his costs, costs of advocacy or attorney fees. The non-prevailing party shall pay all fees of the arbitrator and the American Arbitration Association. The arbitration award shall constitute a definitive ruling, which award shall be recorded with any appropriate jurisdiction and shall constitute a valid basis for subsequent collection.

28.4    **The Award.** During the pendency of mediation or arbitration any suit, legal action or administrative complaint brought by either side shall be abated. The award of the arbitration, when issued, may be entered by either party with the Federal District Court and judgment obtained thereon after filing, as permitted by statute. It is specifically understood that all causes of action including any demand for damages and injunctions may be presented to the arbitrator and the parties hereto hereby specifically grant to the arbitrator the authority to determine these issues, including the issue of arbitrability, subpoena, admissibility and any other legal issue ordinarily addressed by competent courts. Any party found by the arbitrator to have failed to conform to the provisions of this section of the contract, including the appearance at mediation, shall pay the attorney fees, advocacy fees and costs of the other party regardless of any other determination. Any party who seeks judicial review of this arbitration provision or contests the validity of the arbitral award emerging here from, shall post a cash bond of not less than $25,000 to pay the attorney fees of the other party in addressing such issues. Such bond shall be posted with the American Arbitration Association or placed in the escrow account of the appointed arbitrator. If the first court of review does not overturn the arbitral award, the bond shall be liquidated and conveyed to the non-complaining party within 48 hours of the date on which the court decision is announced.

28.5    **Clause Eliminates Access to Court.** Finally, both parties recognize that this provision virtually eliminates their access to most courts and to jury trials.

28.6    **Replacements.** Both parties may, if they wish, appoint Solutions with Consensus, Inc. as a substitute to the American Arbitration Association. If both parties agree, then Solutions with Consensus, Inc. will serve as the forum for mediation and/or arbitration in place of the American Arbitration Association. Provided, however, that the person functioning as the mediator in this matter shall be barred from functioning as the arbitrator if the matter has not been amicably resolved.

29.    Notice.  Any notice or communication required or permitted hereunder shall be deemed to be delivered, whether actually received or not, when deposited in the United States mail, postage fully prepaid, registered or certified mail, and addressed to the intended recipient at the address on the signature page of this Agreement. Any address for notice may be changed by written notice delivered as provided herein.

30.    Determination of Purchase Price.  The Purchase Price of the Accounts has been determined pursuant to negotiations between Purchaser and Seller and represents the fair market value thereof, after due consideration has been given to the nature of the Accounts, the probability of prompt collection thereof, the credit worthiness of the Account Debtor, the payment history of the Account Debtor and other economical factors relative to the Accounts. Further, in arriving at the Purchase Price, consideration has been given to services rendered and services that will be rendered in the future by Purchaser in connection with credit investigations of Account Debtor, supervising the ledgering of accounts purchased, supervising the collection of accounts purchased, and the assumption of certain credit risks. The parties hereto acknowledge that the purchase of the Accounts by Purchaser constitutes an outright conveyance by the Seller to Purchaser.

31.    Provision Regarding Usury.  Nothing contained herein, nor any course of dealing in the future, shall be construed to be anything other than an outright purchase and sale of such Accounts. All right, title and interest of the Seller has been conveyed to Purchaser and such transaction is not subject to a security interest in the Accounts and the Purchase Price paid to Seller by Purchaser constitutes consideration for the acquisition of the Accounts and under no circumstances shall be construed as a loan and no consideration herein set forth is for the use, forbearance or detention of money. Nothing contained herein shall be construed as to require the payment of interest; however, should a court of competent jurisdiction rule that any consideration paid hereunder are in fact or in law to be treated as interest, in no event shall Seller be obligated to pay that interest at a rate in excess of the maximum amount permitted by law, and all agreements, conditions, or stipulations contained herein, if any, which may in any event or contingency whatsoever operate to bind, obligate, or compel Seller to pay a rate of interest exceeding the maximum rate of interest permitted by law shall be without binding force or effect at law or in equity to the extent only of the excess of interest over such maximum rate of interest permitted by law. Also in such event, Purchaser may "spread" all charges characterized as interest over the entire term of all transactions with Seller and will refund to Seller the excess of any payments made over the highest lawful rate. It is the intention of the parties hereto that in the construction and interpretation of this Agreement, the foregoing sentence shall be given precedence over any other agreement, condition, or stipulation herein contained which is in conflict with same.

32.    Maximum Rate.  Seller and Purchaser intend to comply with the applicable law governing the Maximum Rate. Interest contracted for, charged, or received shall not exceed the Maximum Rate, and, if in any contingency whatsoever, Purchaser shall receive anything of value deemed interest under applicable law which would cause

the interest contracted for, charged, or received by the holder thereof to exceed the maximum amount of interest permissible under applicable law, the excessive interest shall be applied to the reduction of the unpaid principal balance hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid principal balance hereof such excess shall be refunded to Seller, and the provisions of this Agreement and any demand on Seller shall immediately be deemed reformed and the amounts thereafter collectible hereunder shall be reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder.  All interest paid or agreed to be paid to the holder hereof shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full term of such indebtedness until payment in full (including the period of any renewal or extension hereof) so that the rate or amount of interest on account of such indebtedness does not exceed the Maximum Rate.

33. **Power of Attorney.** For so long as any Obligations are owed under this Agreement or any Accounts remain outstanding, Purchaser is hereby irrevocably authorized as Seller's attorney-in-fact, with full authority in the place of Seller and in the name of Seller or otherwise, in Purchaser's discretion, to take any action and to execute any instrument which Purchaser may deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation:

33.1 **Endorsement.** To endorse in the name of Seller, and to take all actions necessary to collect for deposit to Purchaser's account, all checks, drafts and other forms of trade acceptances, negotiable instruments and other forms of payment (hereinafter collectively referred to as the "Payments") which are tendered in payment of Accounts or in payment of insurance claims relating to the Accounts, or which are received by Purchaser. The authorization includes, without limitation, the power to open, cash, endorse, deposit and otherwise collect all such Payments in the event they are not made payable to Purchaser;

33.2 **Contact Account Debtors.** To contact Account Debtors at any time in order to verify, settle and/or collect Accounts;

33.3 **Contact IRS.** To contact the Internal Revenue Service and other State and local taxing authorities in order to ascertain Seller's tax liability;

33.4 **Insurance.** To obtain and adjust insurance required to be paid to Purchaser.

33.5 **With Regard to Accounts.** To ask, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Accounts;

33.6 **Filings.** To file, at Seller's expense, any claims or take any action or institute any proceedings which Purchaser may deem necessary or desirable for the collection of any of the Accounts or any of the collateral securing payment of the Accounts or otherwise to enforce the rights of Purchaser with respect to

the Accounts.

This Power of Attorney is irrevocable and coupled with an interest. Seller hereby acknowledges that Seller is not entitled to any notice, demand or presentation with respect to payment of any Account and agrees that Purchaser may extend or renew from time to time the payment of any Account without notice to or consent by Seller.

34.   **Joint and Several Obligations.**  If more than one party is executing this Agreement as Seller, each party agrees that its obligations hereunder are joint and several, and that its obligations shall be not released, diminished, impaired or affected by the occurrence of any one or more of the following events, all of which may occur without notice to or consent of any other Seller:

34.1   **Loss of Collateral,** etc.  Any release, partial release, subordination or loss of any security, guaranty or collateral and any time existing in connection with the obligations contained herein;

34.2   **Loss of Party.**  The death, insolvency, bankruptcy, disability or incapacity of any Seller, guarantor, or any other party now or hereafter obligated hereon;

34.3   **Change in Obligations.**  Any renewal, extension, and/or rearrangement of all or any portion of the obligations contained herein;

34.4   **Failure to Prosecute.**  Any neglect, delay, omission, failure or refusal of Purchaser to take or prosecute any action for the collection of the obligations provided herein;

34.5   **Unenforceability.**  The unenforceability for any reason of all or any part of the obligations contained herein against any Seller, guarantor or other party;

34.6   **Preference.**  The finding of any payment by any Seller to constitute a preference under bankruptcy or similar debtor relief law;

34.7   **Release.**  Any release or partial release of liability of any Seller, guarantor or other party; and

34.8   **Other Actions.**  Any other action that might impair rights in the nature of contribution or subrogation that any Seller might otherwise have.

35.   **No Obligation to Purchase Further Receivables.**  Seller specifically acknowledges and agrees that, anything herein to the contrary notwithstanding, Purchaser has the right to approve or reject any or all future Accounts proposed for sale under this Agreement IN ITS SOLE DISCRETION, and no course of conduct or prior course of dealing shall establish any commitment, obligation or agreement to purchase future Accounts.

36.   **Headings, Construction.**   The headings contained in this Agreement are for reference purposes only and shall not modify or affect the terms of this Agreement in

any manner.

37. **Saturday, Sunday or Legal Holiday.** If any day provided in this Agreement for the performance of any obligation should fall on a Saturday, Sunday or Legal Holiday, the compliance with such obligation or delivery shall be deemed acceptable on the next business day following such day.

38. **Receipt of Payment.** Any payment received by Purchaser on a Saturday, Sunday or day on which state banks doing business in the State of Texas are closed for regular business (a "Legal Holiday"), or any payment that is received by Purchaser after 3:00 p.m., shall be deemed received on the next day that is not a Saturday, Sunday or Legal Holiday.

39. **Submission to Jurisdiction.**

   39.1 DALLAS COUNTY. ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT AND THE OTHER DOCUMENTS TO WHICH SELLER AND PURCHASER ARE A PARTY MAY BE BROUGHT IN THE COURTS OF THE STATE OF TEXAS OR OF THE UNITED STATES LOCATED IN DALLAS COUNTY, TEXAS AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, SELLER HEREBY IRREVOCABLY ACCEPTS FOR ITSELF AND IN RESPECT OF SELLER'S PROPERTY, UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS WITH RESPECT TO ANY SUCH ACTION OR PROCEEDING. SELLER FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO SELLER PURSUANT TO SECTION 29, SUCH SERVICE TO BECOME EFFECTIVE THIRTY (30) DAYS AFTER SUCH MAILING. NOTHING IN THIS AGREEMENT SHALL AFFECT THE RIGHT OF PURCHASER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST SELLER IN ANY OTHER JURISDICTION.

   39.2 VENUE. SELLER HEREBY IRREVOCABLY WAIVES ANY OBJECTION WHICH SELLER MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY OF THE AFORESAID ACTIONS OR PROCEEDINGS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT BROUGHT IN THE COURTS REFERRED TO IN CLAUSE 39 OF THIS SECTION 39 AND HEREBY FURTHER IRREVOCABLY WAIVES AND AGREES NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

40. **Use of Facsimiles.** The parties acknowledge and agree that it is anticipated that execution of this Agreement, as well as schedules or other documents executed in

ACCOUNTS RECEIVABLE PURCHASING AGREEMENT                                    Page 23
BN 1469434v3

connection herewith, may be evidenced by facsimile signatures, and such documents containing facsimile signatures shall be of the same force and effect as if original signatures had been obtained.

41.    **Counterparts.**  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

42.    **Entire Agreement.**   This Agreement contains the entire understanding and agreement between the parties, and supersedes all other prior or contemporaneous agreements and understandings between the parties, verbal or written, express or implied, relating to the subject matter hereof. No promises, warranties, representations, or understandings of any kind have been made by Purchaser or any third party that are not contained in this Agreement. No course of dealing, course of performance or trade usage, and no parol evidence of any nature, shall be allowable in order to supplement or modify any terms of this Agreement.

[Signatures appear on following page]

IN WITNESS WHEREOF, the Parties have executed this agreement on the day and year first above written.

PURCHASER: Green Bank, N.A.

By: _Donald R. Hardy_

Name: Donald R. Hardy
Title: Senior Vice President

Address: Green Bank, N.A
    1301 E. Campbell Road
    Richardson, TX  75081

SELLER: Nogal Energy, LLC

By: _____

Name: Ron E. Bruno

Title: _Member_

Address: Nogal Energy, LLC
    3102 Maple Ave, suite 100 Dallas
    Texas, 75201

IN WITNESS WHEREOF, the Parties have executed this agreement on the day and year first above written.

PURCHASER: Green Bank, N.A.

By: _____

Name: Donald R. Hardy
Title: Senior Vice President

Address: Green Bank, N.A
    1301 E. Campbell Road
    Richardson, TX 75081

SELLER Triple T Coil Tubing, LLC

By: _____

Name: Ron E. Bruno

Title: _____

Address: Triple T Coil Tubing, LLC
    3102 Maple Ave, suite 100 Dallas
    Texas, 75201

SELLER Triple T Coil Tubing, LLC

By: _____

Name: Christopher Garcia

Title: CFO _____

Address: Triple T Coil Tubing, LLC
    3102 Maple Ave, suite 100 Dallas
    Texas, 75201

SELLER Triple T Coil Tubing, LLC

By: _____

Name: Troy J. Williams

Title: _____CEO_____

Address: Triple T Coil Tubing, LLC
          3102 Maple Ave, suite 100 Dallas
          Texas, 75201


SELLER Triple T Coil Tubing, LLC

By: _____

Name: Sergio E. Lopez, SR.

Title: _____INt. Business Dir_____

Address: Triple T Coil Tubing, LLC
          3102 Maple Ave, suite 100 Dallas
          Texas, 75201


SELLER Triple T Coil Tubing, LLC

By: _____

Name: Patrick G. Mendoza

Title: _____CEO_____

Address: Triple T Coil Tubing, LLC
          3102 Maple Ave, suite 100 Dallas
          · Texas, 75201

STATE OF TEXAS          §

COUNTY OF ~~DALLAS~~ *Webb*    §
§

> SAREENA ALLAYNA THOMAS
> Notary Public, State of Texas
> My Commission Expires
> April 14, 2015

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared *Sergio E. Lopez Sr.* as *Intl. Business Direct.* of *Triple T Coil Tubing* a *member*, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 14th day of *January*, 2014.

_____
NOTARY PUBLIC, State of Texas

---

STATE OF TEXAS          §

COUNTY OF ~~DALLAS~~ *Webb*    §
§

> SAREENA ALLAYNA THOMAS
> Notary Public, State of Texas
> My Commission Expires
> April 14, 2015

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared *Patrick G. Mendoza* as *CEO* of *Triple T Coil Tubing* a *member*, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 14th day of *January*, 2014.

_____
NOTARY PUBLIC, State of Texas

ACCOUNTS RECEIVABLE PURCHASING AGREEMENT
BN 14694343

Page 27

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared _Ron E. Bruno_ as _member_ of _Nogal Energy, LLC_ a _Director of Business_, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _14th_ day of _January_, 2014.

GENOVEVA JIMENEZ
MY COMMISSION EXPIRES
May 10, 2017

_Genoveva Gimenez_
NOTARY PUBLIC, State of Texas

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared _Christopher Garcia_ as _CFO_ of _Nogal Energy, LLC_ a _member_, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _14th_ day of _January_, 2014.

GENOVEVA JIMENEZ
MY COMMISSION EXPIRES
May 10, 2017

_Genoveva Gimenez_
NOTARY PUBLIC, State of Texas

STATE OF TEXAS        §

COUNTY OF WEBB    §
                 §

> SABEENA ALLAYNA THOMAS
> Notary Public, State of Texas
> My Commission Expires
> April 14, 2015

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared _Troy J. Williams_ as _COO_ of _Triple T Oilfield_, a _member_, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _14th_ day of _January_, 2014.

_____
NOTARY PUBLIC, State of Texas


STATE OF TEXAS        §

COUNTY OF            §
                 §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared _____ as _____ of _____ a _____, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _____ day of _____, 2014.

_____
NOTARY PUBLIC, State of Texas

ACCOUNTS RECEIVABLE PURCHASING AGREEMENT
DN 1469434v3

Page 28

STATE OF TEXAS                              §
                                           §
COUNTY OF DALLAS                           §

     BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared Don Hardy , SVP _____ of Green Bank, N.A. known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same on behalf of said banking institution for the purposes and consideration therein expressed and in the capacity therein stated.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 14th day of January, 2014.



                        *Genoveva Jimenez*
                        NOTARY PUBLIC, State of Texas

GENOVEVA JIMENEZ
MY COMMISSION EXPIRES
May 10, 2017

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**14-0002224530**

**01/16/2014 05:00 PM**

**FILED**

TEXAS
SECRETARY OF STATE

SOS

525919350002

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

RECEIVED
JAN 16 2014
CLK 64

3929 - Green Bank, N.A.

41385383

TXTX

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Triple T Coil Tubing, LLC | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3102 Maple Avenue, STE 100 | Dallas | TX | 75201-1352 | USA |

**2. DEBTOR'S NAME:** Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Green Bank, N.A. | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1301 East Campbell Road | Richardson | TX | 75081 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

As collateral securing all present and future obligations of debtor to Secured Party, Debtor hereby grants to Secured Party a security interest in the following, whether now owned or hereafter acquired:

All accounts, contract rights, instruments, documents, chattel paper, general intangibles (including but not limited to trademarks, tradenames, patents, copyrights and all other forms of intellectual property, and tax refunds), returned and repossessed goods and all collateral, as a seller of goods; all collateral securing any of the foregoing; all deposit accounts, special and general, whether on deposit with Secured Party or others;

All inventory wherever located; all present and future claims against any supplier of the foregoing, including claims for defective goods or overpayments to or undershipments by suppliers; all proceeds arising from the lease or rental of any of the foregoing; INVENTORY RETURNED BY THE DEBTOR TO IT'S SUPPLIER SHALL REMAIN SUBJECT TO SECURED PARTY'S SECURITY INTEREST;

All equipment and fixtures, NONE OF WHICH THE DEBTOR IS AUTHORIZED TO SELL, LEASE OR OTHERWISE DISPOSE OF WITHOUT THE WRITTEN PERMISSION OF SECURED PARTY. All warranty and other claims against any vendor or lessor for any of the foregoing;

All cash and non-cash proceeds of any of the foregoing, in whatever form (including proceeds in the form of inventory, equipment or any other form of personal property), including proceeds of proceeds;

**5.** Check **only** if applicable and check **only one** box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check **only** if applicable and check **only** one box: | | | 6b. Check **only** if applicable and check **only** one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
41385383                          Triple

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |  |  |
| --- | --- | --- |
| Triple T Coil Tubing, LLC |  |  |

OR

| 9b. INDIVIDUAL'S SURNAME |  |  |
| --- | --- | --- |
| FIRST PERSONAL NAME |  |  |
| ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only _one_ additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |  |  |  |  |  |
| --- | --- | --- | --- | --- | --- |

OR

| 10b. INDIVIDUAL'S SURNAME |  |  |  |  |  |
| --- | --- | --- | --- | --- | --- |
| INDIVIDUAL'S FIRST PERSONAL NAME |  |  |  |  |  |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |  |  |  |  | SUFFIX |
| 10c. MAILING ADDRESS | CITY |  | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   _or_   ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only _one_ name (11a or 11b)

| 11a. ORGANIZATION'S NAME |  |  |  |  |
| --- | --- | --- | --- | --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |
| --- | --- | --- | --- | --- |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
All investment property.

NOTICE: PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED TO NOT FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHTS BY SUCH ENCUMBRANCER.

IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| --- | --- |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:  41385383-TX-0   3929 - Green Bank, N.A.        Green Bank, N.A.        File with: Secretary of State, TX        Triple

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

Dec. 31. 2013 11:02AM                                              No. 6218   P. 1

# PHELPS DUNBAR
#### LLP                    Louisiana | Mississippi | Texas | Florida | Alabama | North Carolina | London
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
504-566-1311
504-568-9130 Fax

## FACSIMILE COVER SHEET

### December 31, 2013

OUR FILE: 27532-0010

| | |
|---|---|
| TO: | TEXAS SECRETARY OF STATE |
| | Uniform Commercial Code Section |
| | **ATTN SHANETRA** |

RECEIVED
SECRETARY OF STATE

DEC 3 1 2013

CLK 55
AUSTIN, TEXAS

| | |
|---|---|
| FACSIMILE NO: | 512-463-1423 |
| TELEPHONE NO.: | 512-475-2700 |
| FROM: | Lynn Rose – (504) 566-1311 EXT 1434 |
| RE: | File UCC-1 – Debtor- Triple T Coil Tubing, LLC, |
| | Secured Party: HCC-High Capacity Coil, LLC. |
| TOTAL PAGES | 7 (INCLUDING THIS PAGE) |
| MESSAGE: | Please accept the attached UCC-1 for filing in the UCC records |
| | of your office.  Thanks! |

PLEASE ACKNOWLEDGE RECEIPT OF THIS FILING by phone (504) 566-1311 ext. 1434
or by email

Thanks!

*Please see attached revision — please file!*

### CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

IF THERE IS ANY PROBLEM RECEIVING THIS MESSAGE,
PLEASE CALL 504-566-1311 AND ASK FOR LYNN ROSE.
FACSIMILE - 504-568-9130

PD.10852665.1